UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 10-0133 (PLF) |
| | ) | |
| FLOYD CLARK, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

The matter is before the Court on the motion [Dkt. No. 128] of defendant Floyd Clark to admit hearsay in support of his separate motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The United States opposes the motion. Upon careful consideration of the parties' papers, the relevant legal authorities, the evidentiary hearing on June 20, 2016, and the entire record in this case, the Court will grant Mr. Clark's motion to admit hearsay.[1]

---

[1] The Court has reviewed the following documents and accompanying exhibits in connection with the pending motion: Indictment [Dkt. No. 6]; Verdict Form [Dkt. No. 55]; December 9, 2010 Transcript of Trial Proceedings ("Dec. 9, 2010 Trial Tr.") [Dkt. No. 67]; Presentence Investigation Report ("PSR") [Dkt. No. 72]; Judgment [Dkt. No. 84]; Amended Presentence Investigation Report ("Amended PSR") [Dkt. No. 92]; December 6, 2010 Transcript of Motion Hearing ("Dec. 6, 2010 Hr'g Tr.") [Dkt. No. 94]; December 7, 2010 Transcript of Trial Proceedings ("Dec. 7, 2010 Trial Tr.") [Dkt. No. 95]; December 8, 2010 Transcript of Trial Proceedings ("Dec. 8, 2010 Trial Tr.") [Dkt. No. 96]; December 13, 2010 Transcript of Trial Proceedings ("Dec. 13, 2010 Trial Tr.") [Dkt. No. 97]; August 11, 2011 Transcript of Sentencing Proceedings ("Aug. 11, 2011 Sentencing Tr.") [Dkt. No. 98]; June 9, 2011 Transcript of Sentencing Proceedings ("June 9, 2011 Sentencing Tr.") [Dkt. No. 99]; Amended Judgment [Dkt. No. 109]; Mr. Clark's Pro Se Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 ("Section 2255 Mot.") [Dkt. No. 114]; United States' Opposition to Section 2255 Motion ("Section 2255 Opp'n") [Dkt. No. 118]; Mr. Clark's Pro Se Reply to Section 2255 Motion ("Section 2255 Reply") [Dkt. No. 122]; Mr. Clark's Declaration in Support of Reply to Section 2255 Mot. [Dkt. No. 123]; Mr. Clark's Supplement to Section 2255 Motion ("Section

I. BACKGROUND

A. *Procedural History*

On May 6, 2009, two men carjacked, robbed, and kidnapped Michael Walker at gunpoint in Washington, D.C. On May 18, 2010, a grand jury returned a nine-count indictment charging defendant Floyd Clark in connection with the attack. The indictment included: one count of kidnapping, in violation of 18 U.S.C. § 1201(a)(1); two counts of using, carrying, possessing, or brandishing a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(ii); one count of carjacking, in violation of 18 U.S.C. § 2119(2); one count of carjacking while armed, in violation of D.C. Code §§ 22-2803 and 22-4502; two counts of possession of a firearm during the commission of a crime of violence, in violation of D.C. Code § 22-4504(b); one count of armed robbery, in violation of D.C. Code §§ 22-2801 and 22-4502; and one count of unlawful possession of a firearm by an individual under felony indictment, in violation of 18 U.S.C. § 922(n). See Indictment.

At trial in December 2010, Mr. Walker testified that Mr. Clark was one of the two men who attacked him on May 6, 2009. See Dec. 8, 2010 Trial Tr. at 78-80. He stated that he and Mr. Clark began selling drugs together around August or September 2008. See id. at Tr. 57-61.[2] He explained that on May 6, 2009, Mr. Clark called him to suggest that they meet at a

---

2255 Suppl.") [Dkt. No. 124]; Mr. Clark's Motion to Admit Hearsay ("Mot.") [Dkt. No. 128]; United States' Opposition to Hearsay Motion ("Opp'n") [Dkt. No. 129]; Mr. Clark's Reply to Hearsay Motion ("Reply") [Dkt. No. 131]; United States' Supplemental Brief in Opposition to Hearsay Motion ("US Suppl. Br.") [Dkt. No. 133]; Mr. Clark's Supplemental Brief in Support of Hearsay Motion ("Clark Suppl. Br.") [Dkt. No. 135]; June 20, 2016 Transcript of Evidentiary Hearing ("June 20, 2016 Hr'g Tr.") [Dkt. No. 136]; and December 10, 2010 Transcript of Trial Proceedings ("Dec. 10, 2010 Trial Tr.").

[2]    Mr. Walker testified that he received immunity from prosecution in exchange for his testimony. See Dec. 8, 2010 Trial Tr. at 54.

local shopping center to discuss a buyer interested in purchasing narcotics for $30,000. See id. 65-67, 70. Mr. Walker drove his wife's car to the designated meeting place. See id. at 70-71, 96. Mr. Walker stated that when he arrived, Mr. Clark and another man entered his car. See id. at 74-76. According to Mr. Walker, Mr. Clark pulled a gun from under his shirt and demanded money from Mr. Walker. See id. at 78-83. Mr. Clark and the other assailant then took Mr. Walker's gold chain, watch, money, and wallet. See id. at 81-82. Mr. Walker testified that Mr. Clark and the other assailant drove Mr. Walker to various locations where they thought he had stored large sums of money. See id. at 83-104. Mr. Walker stated that he eventually ran away from Mr. Clark and called the police. See id. at 103-04.

On December 13, 2010, a jury convicted Mr. Clark on all counts of the indictment. See Verdict Form. The Court subsequently granted the United States' motion to vacate Mr. Clark's conviction on Count Four, one of the two Section 924(c) charges. See Aug. 11, 2011 Sentencing Tr. at 29. On August 11, 2011, the Court imposed an aggregate term of 284 months in prison, followed by five years of supervised release. See Judgment at 1-5. On May 16, 2014, the D.C. Circuit affirmed the convictions, except with respect to the sentence for the remaining Section 924(c) conviction (Count Two), which was remanded to this Court for resentencing. See United States v. Clark, 565 F. App'x 4, 5 (D.C. Cir. 2014). On September 29, 2014, this Court resentenced Mr. Clark to 60 months in prison on the Section 924(c) conviction. See Amended Judgment at 3. Mr. Clark's new aggregate term of imprisonment therefore was 260 months. See id.

On April 2, 2015, Mr. Clark filed a pro se motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. See Section 2255 Mot. at 4. Counsel for Mr. Clark filed a supplement to the pro se Section 2255 motion in August 2015. See Section 2255 Suppl. at 1. As

relevant here, Mr. Clark seeks relief under Section 2255 based on newly discovered evidence – namely, an affidavit signed by the victim in this case, Michael Walker, who was the government's key witness at trial. In the affidavit, Mr. Walker recanted his earlier trial testimony identifying Mr. Clark as one of his two attackers. See Section 2255 Mot. Attach. 2.

In March 2016, the Court granted Mr. Clark's request for an evidentiary hearing on the Section 2255 motion. See March 1, 2016 Minute Order. But prior to the evidentiary hearing, Mr. Clark filed the motion now pending before the Court – a motion to admit Mr. Walker's recanting affidavit under an exception to the rule against hearsay. See Mot. at 1. Mr. Clark argued that if Mr. Walker were to invoke his Fifth Amendment privilege against self-incrimination and refuse to testify at the evidentiary hearing, his affidavit would be admissible as a statement against interest under Rule 804(b)(3) of the Federal Rules of Evidence. See id. at 2-3.

### B. Evidentiary Hearing

On June 20, 2016, the Court held an evidentiary hearing on the Section 2255 motion and heard oral argument on Mr. Clark's motion to admit hearsay. The first witness at the evidentiary hearing was the victim in this case, Michael Walker. As anticipated, and on the advice of counsel appointed by the Court, Mr. Walker invoked his Fifth Amendment privilege against self-incrimination and refused to answer questions about his purported recantation on the ground that doing so could expose him to criminal liability for perjury. See June 20, 2016 Hr'g Tr. at 10-12, 21-25. The Court held that Mr. Walker properly invoked the privilege and that under Hoffman v. United States, 341 U.S. 479, 486-87 (1951), the privilege would extend to both the substance of the recantation and the circumstances surrounding his decision to sign the affidavit. See June 20, 2016 Hr'g Tr. at 16-18, 25-26. As to whether Mr. Walker would be

4

immune from prosecution, the Court determined that it lacked inherent authority to grant use immunity to Mr. Walker absent a request from the United States. See id. at 32-33; United States v. Perkins, 138 F.3d 421, 424 (D.C. Cir. 1998); United States v. Lugg, 892 F.2d 101, 104 (D.C. Cir. 1989). The Court further determined that only the United States may seek use immunity, which the United States declined to do at the evidentiary hearing. See June 20, 2016 Hr'g Tr. at 28, 32-33; United States v. Moore, 651 F.3d 30, 82 (D.C. Cir. 2011).

The Court then heard testimony from three witnesses regarding Mr. Walker's statements in 2014 and 2015. Mr. Clark called as his witness Ronetta Johnson, the private investigator who obtained Mr. Walker's affidavit. Ms. Johnson testified that she had been a private investigator in Washington, D.C. for fourteen years. See June 20, 2016 Hr'g Tr. at 36. She explained that one of Mr. Clark's family members had contacted her and stated that Mr. Walker was willing to speak to her about Mr. Clark's case. See id. at 38. In response, Ms. Johnson called Mr. Walker to arrange a time to interview him. See id. She testified that Mr. Walker came to her office for the interview on August 1, 2014. See id. at 38, 43. According to Ms. Johnson, she and Mr. Walker spoke in a conversational manner about the May 2009 attack "and then [she] took the statement after that." See id. at 39. She said that she drafted an affidavit for Mr. Walker based on their conversation, after which Mr. Walker reviewed the affidavit page by page and made several changes to it before signing each page. See id. at 39-40, 47. She stated that she did not suggest any changes that Mr. Walker should make. See id. Ms. Johnson further testified that, consistent with her standard practice, she had the affidavit notarized that same day by a notary in her office building. See id. at 39, 42. In addition, she gave one of her business cards to Mr. Walker. See id. at 52. Ms. Johnson stated that she did not threaten or coerce Mr. Walker, tell him in advance what to say, or advise him that the statute of

5

limitations for perjury had expired. See id. at 39, 41-42, 52. She testified that Mr. Walker signed the affidavit voluntarily. See id. After the interview, Ms. Johnson mailed Mr. Walker's affidavit to Mr. Clark with a cover letter on her company's letterhead. See id. at 49, 51.

The United States then called its first witness, Michael Hailey, the supervisor of the Witness Security Section of the U.S. Attorney's Office for the District of Columbia. See June 20, 2016 Hr'g Tr. at 57. Mr. Hailey testified that Mr. Walker called the U.S. Attorney's Office to express concerns about his safety. See id. at 57-58. Mr. Hailey returned Mr. Walker's call on February 25, 2015. See id. at 62. According to Mr. Hailey, Mr. Walker said that a friend of Mr. Clark's had approached Mr. Walker in a barbershop and told him that Mr. Clark's case was "up for appeal" and that Mr. Walker could change his story. See id. at 60. Mr. Walker told Mr. Hailey that four months prior to their February 2015 telephone conversation, a defense investigator came to Mr. Walker's home to take his statement. See id. at 61. Mr. Walker explained that the investigator told him that he could change his testimony without exposing himself to perjury charges because the statute of limitations for perjury had expired. See id. at 62. Mr. Walker also told Mr. Hailey that the investigator "wrote a statement out and then asked him to read it and sign it." See id. According to Mr. Hailey, Mr. Walker said that he read and signed the affidavit prepared by the investigator "knowing that what he had signed was not the truth." See id. Mr. Walker further stated that the private investigator was a woman and that she gave her business card to him. See id. at 63.

The United States called as its second witness Tommy Miller, the lead criminal investigator for the Criminal Investigations and Intelligence Unit of the U.S. Attorney's Office for the District of Columbia. See June 20, 2016 Hr'g Tr. at 73. Mr. Miller testified that on June 15, 2016 – five days before the June 20, 2016 evidentiary hearing – he met with Mr. Walker, Mr.

6

Walker's counsel, and Assistant U.S. Attorney James Sweeney. See id. at 73-74. At that meeting, Mr. Walker stated that the private investigator wrote the affidavit and that he signed it without reading it. See id. at 74. Mr. Walker told Mr. Miller that the affidavit reflected "the investigator's words, not [Mr. Walker's]." See id. at 74-75. Specifically, Mr. Walker said that although the investigator wrote the affidavit in his presence, Mr. Walker himself did not provide any of the information in the statement and "[t]he investigator wrote it on her own." See id. at 88-89. According to Mr. Miller, Mr. Walker stated that the statements in the affidavit were not true and that it was indeed Mr. Clark who attacked him on May 6, 2009. See id. at 74-75. Mr. Walker also told Mr. Miller that he signed the affidavit because he wanted leniency for Mr. Clark and did not want him to serve any additional time. See id. at 78.

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255, a federal prisoner may move to vacate, set aside, or correct a sentence that was "imposed in violation of the Constitution or laws of the United States, . . . [or] was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The circumstances under which such a motion will be granted, however, are limited in light of the premium placed on the finality of judgments and the opportunities prisoners have to raise most of their objections during trial or on direct appeal. See United States v. Henry, 821 F. Supp. 2d 249, 253 (D.D.C. 2011).

Recanting affidavits and recanting witnesses "are looked upon with the utmost suspicion by the courts." United States v. Mahdi, 172 F. Supp. 3d 57, 68 (D.D.C. 2016) (quoting United States v. Kearney, 682 F.2d 214, 219 (D.C. Cir. 1982)). The defendant is eligible for relief under Section 2255 based on a witness' recantation only if: (1) the Court is "reasonably well satisfied" that the witness' original testimony was in fact false, see United States v. Henry,

7

821 F. Supp. 2d at 258; and (2) the defendant shows that, absent the recanted testimony, "a new trial would probably produce an acquittal," see id. at 260 (emphasis in original). See also United States v. Mahdi, 172 F. Supp. 3d at 68 (citing United States v. Williams, 233 F.3d 592, 593 (D.C. Cir. 2000)). The question for the moment, however, is not whether to grant Mr. Clark's motion to vacate, set aside, or correct his conviction based on the recanting affidavit of Mr. Walker, but whether to consider the affidavit at all.

## III. DISCUSSION

Mr. Clark seeks to admit Mr. Walker's sworn affidavit in which Mr. Walker recanted his earlier trial testimony identifying Mr. Clark as one of the two people who carjacked, robbed, and kidnapped him on May 6, 2009. See Mot. at 3. Mr. Clark argues that Mr. Walker's recanting affidavit is admissible in this Section 2255 proceeding as a statement against interest under Rule 804(b)(3) of the Federal Rules of Evidence.

Rule 804(b)(3) provides that a statement is not inadmissible under the rule against hearsay if the declarant is unavailable to testify as a witness and is a statement that:

> (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

See FED. R. EVID. 804(b)(3). See also United States v. Slatten, 865 F.3d 767, 805-06 (D.C. Cir. 2017); United States v. Moore, 651 F.3d at 82. The party offering the statement bears the burden

8

of establishing that the statement meets these requirements. See United States v. Bigesby, 685 F.3d 1060, 1065 (D.C. Cir. 2012); United States v. Moore, 651 F.3d at 82-83.[3]

The parties agree that Mr. Walker is unavailable as a witness because he invoked his Fifth Amendment privilege against self-incrimination at the evidentiary hearing on June 20, 2016. See Opp'n at 3. They also agree that the recanting affidavit constitutes a statement against Mr. Walker's penal interest because it could expose him to criminal liability for perjury. See id. But the parties dispute whether Mr. Clark has shown that corroborating circumstances "clearly indicate" the trustworthiness of the affidavit for purposes of Rule 804(b)(3). Mr. Clark maintains that Ms. Johnson's testimony concerning the circumstances surrounding the creation of Mr. Walker's affidavit and the affidavit itself satisfy this test. In response, the United States relies on statements made by Mr. Walker to the two representatives of the U.S. Attorney's Office asserting that the affidavit contains false information and that Mr. Clark did in fact attack Mr. Walker on May 6, 2009.

The question under Rule 804(b)(3) is not whether Mr. Walker's affidavit is more credible than his trial testimony or more credible than what he told the two representatives of the U.S. Attorney's Office many years after trial. Nor is it whether the Court ultimately credits Ms. Johnson's testimony or the testimony of Mr. Hailey and Mr. Miller regarding the conversations they had with Mr. Walker. The corroboration that is required by Rule 804(b)(3)

---

[3] The United States asks the Court to construe the underlying Section 2255 motion as a motion for a new trial under Rule 33 of the Federal Rules of Criminal Procedure and to deny the motion as time-barred. See FED. R. CRIM. P. 33 ("Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty."). For purposes of this opinion, the Court will construe Mr. Clark's motion as one brought under Section 2255. See United States v. Henry, 821 F. Supp. 2d at 249 (construing claim based on recanting affidavit from unavailable witness as Section 2255 claim); United States v. Mahdi, 172 F. Supp. 3d at 67-70 (construing claim that recanting affidavit would result in acquittal if presented at new trial as Section 2255 claim).

9

"is not independent evidence supporting the truth of the matters asserted by the hearsay statements, but evidence that clearly indicates that the statements are worthy of belief, based upon the circumstances in which the statements were made." United States v. Barone, 114 F.3d 1284, 1300 (1st Cir. 1997) (corroboration requirement not concerned with veracity of the in-court witness or credibility of witness who relayed out-of-court statement). Indeed, it is quite possible that all three witnesses are accurately and truthfully describing what Mr. Walker told them. After all, Mr. Walker has told many different versions of what transpired to many different people – including the police and the jury. As the Advisory Committee stated:

> In assessing whether corroborating circumstances exist, some courts have focused on the credibility of the witness who relates the hearsay statement in court. But the credibility of the witness who relates the statement is not a proper factor for the court to consider in assessing corroborating circumstances. To base admission or exclusion of a hearsay statement on the witness's credibility would usurp the jury's role of determining the credibility of testifying witnesses.

See FED. R. EVID. 804(b) advisory committee's note. The question before the Court at this stage is whether the statement made by Mr. Walker to Ms. Johnson is supported by "corroborating circumstances that clearly indicate its trustworthiness." FED. R. EVID. 804(b)(3). The Court concludes that this test is met here.

There is no dispute that Mr. Walker met with Ms. Johnson in 2014 regarding Mr. Clark's case and signed the affidavit that Ms. Johnson drafted in Mr. Walker's presence. There is also no dispute that the affidavit is notarized. Cf. Haouari v. United States, 510 F.3d 350, 354 (2d Cir. 2007) (rejecting unsworn letter from recanting co-conspirator); Memorandum Opinion, United States v. Williams, No. 91-0559 (D.D.C. Sept. 6, 1996), ECF No. 1615 at 22 (denying motion for new trial based in part on unsworn and undated letter from recanting witness). The circumstances under which Mr. Walker signed the affidavit are corroborated by the testimony of

Ms. Johnson, a private investigator with over fourteen years of experience who obtained the affidavit from Mr. Walker. See June 20, 2016 Hr'g Tr. at 36. Ms. Johnson testified that she met with Mr. Walker in her office, elicited the facts from him in a conversational manner, and then wrote a detailed, ten-page affidavit for his consideration in his own words based on his account of the May 6, 2009 attack. See id. at 39-40, 47. She testified that he provided the affidavit voluntarily and that he read, corrected, and initialed each page of the affidavit. See id. 39-47. Consistent with her standard practice, the affidavit was notarized that same day by a notary in her office building. See id. at 39, 42. Ms. Johnson's testimony is supported by a review of the affidavit itself, which shows hand-written words corrected and stricken with Mr. Walker's initials next to each correction and his signature at the bottom of each page. See Section 2255 Mot. Attach 2.

The testimony of Mr. Hailey and Mr. Miller does not undermine the "clear trustworthiness" of the corroborating circumstances surrounding the creation of the recanting affidavit. Unlike the mine run of cases where courts have rejected recantations as untrustworthy, here Mr. Walker's affidavit was obtained by an experienced private investigator who testified under oath to the circumstances under which Mr. Walker signed the affidavit, which was then notarized. In contrast, Mr. Walker's statements to Mr. Hailey and Mr. Miller were not memorialized in a sworn affidavit. Furthermore, and importantly, Mr. Walker's statements to Mr. Miller and Mr. Hailey that he never conveyed any of the facts contained in the affidavit to Ms. Johnson, that she wrote it on her own in his presence, and that he did not read it before signing it are not credible. Where did Ms. Johnson get the facts to insert in a ten-page affidavit that she hand-wrote in Mr. Walker's presence if not from Mr. Walker? If she got them from someone else, why did she write the affidavit in Mr. Walker's presence? The detail and

11

specificity of the facts in the affidavit suggest that they came from Mr. Walker during his meeting with an experienced private investigator, not from the investigator herself. Whether what Mr. Walker told her was true or not is, of course, a separate question.

The Court concludes that Mr. Walker's recanting affidavit meets the standard for trustworthiness under Rule 804(b)(3). Whether Mr. Walker's recanting affidavit is sufficiently persuasive to entitle Mr. Clark to Section 2255 relief is a separate question – one which the Court will consider at a hearing on the merits of Mr. Clark's Section 2255 motion. "Matters such as the truth of what is asserted by [Mr. Walker's] hearsay statement[], the credibility of witnesses, and the weight to be accorded evidence" are matters to be determined at the Section 2255 hearing. Cf. United States v. Barone, 114 F.3d at 1301. At the hearing, the Court will consider the testimony of Mr. Hailey and Mr. Miller if the United States chooses to call them as witnesses. Such hearsay testimony is sufficiently reliable.

IV. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that the motion [Dkt. No. 128] of defendant Floyd Clark to admit hearsay testimony in support of his motion under 28 U.S.C. § 2255 is GRANTED; and it is

FURTHER ORDERED that the parties shall meet and confer and file a joint report on or before September 28, 2018 proposing dates for supplemental briefing and for a hearing on Mr. Clark's Section 2255 motion as it relates to Mr. Walker's recanting affidavit.

SO ORDERED.

DATE: September 18, 2018

_____
PAUL L. FRIEDMAN
United States District Judge