UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> v. ) <br> ) Criminal No. 10-0133 (PLF) <br> FLOYD CLARK, ) <br> ) <br> Defendant. ) <br> ) | |

OPINION AND ORDER

Defendant Floyd Clark has filed a Motion for Compassionate Release ("Def. Mot.") [Dkt. No. 168]. Mr. Clark seeks a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A) because, he contends, he is at risk of serious illness or death if he contracts the novel coronavirus ("COVID-19") and he has been substantially rehabilitated while incarcerated. Def. Mot. at 7-14, 16; Reply to Opposition to Motion for Compassionate Release ("Def. Reply") [Dkt. No. 172] at 2-5. The United States opposes the motion, arguing that a sentence reduction is not warranted because Mr. Clark has been fully vaccinated against COVID-19, and because the serious nature of Mr. Clark's offense and his criminal history weigh against releasing him. United States' Surreply to Defendant's Motion for Sentence Reduction and Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) ("Gov't Surreply") [Dkt. No. 179] at 1-2. For the following reasons, the Court will deny Mr. Clark's motion.[1]

---

[1] The documents that the Court has considered in connection with the pending motion include: Indictment ("Indictment") [Dkt. No. 6]; Verdict Form ("Verdict Form") [Dkt. No. 55]; Presentence Investigation Report ("PSR") [Dkt. No. 72]; Judgment ("Judgment") [Dkt. No. 84]; Amended Judgment ("Amended Judgment") [Dkt. No. 109]; Motion to Vacate Under 28 U.S.C. § 2255 ("Mot. Vacate") [Dkt. No. 114]; Supplement to Defendant's Motion Pursuant to 28 U.S.C. § 2255 ("First Suppl. Mot. Vacate") [Dkt. No. 132]; Defendant's

## I. BACKGROUND

On May 18, 2010, a grand jury charged Mr. Clark in a nine-count indictment in relation to an alleged kidnapping, carjacking, and armed robbery. Indictment at 1-4. On December 13, 2010, a jury found Mr. Clark guilty on all nine counts of the indictment. Verdict Form at 1-3. On August 11, 2011, the Court sentenced Mr. Clark to 284 months in prison. Judgment at 3. The court of appeals subsequently vacated Mr. Clark's sentence under 18 U.S.C. § 924(c)(1)(A)(ii) because it concluded that, in light of the Supreme Court's decision in Alleyne v. United States, 570 U.S. 99 (2013), the question of whether Mr. Clark brandished a firearm should have been submitted to the jury. United States v. Clark ("Clark I"), 565 F. App'x 4, 5 (D.C. Cir. 2014). On remand, this Court resentenced Mr. Clark to 60 months of incarceration on the Section 924(c) conviction, resulting in a total term of 260 months of incarceration. Amended Judgement at 1-3.

Mr. Clark moved to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. See Mot. Vacate; First Suppl. Mot. Vacate. On April 22, 2019, the Court denied Mr. Clark's motion to vacate with respect to his claims of new evidence and ineffective assistance of counsel, but held the motion in abeyance with respect to his Section 924(c) conviction pending the Supreme Court's ruling in United States v. Davis, No. 18-43. United

---

Supplemental Pleading Concerning United States v. Davis ("Second Suppl. Mot. Vacate") [Dkt. No. 160]; Motion for Compassionate Release ("Def. Mot.") [Dkt. No. 168]; Defense Exhibit 2 – Request to Warden ("Def. Ex. 2") [Dkt. No. 168-1]; Defense Exhibit 3 – Inmate Medical Records ("Def. Ex. 3") [Dkt. No. 168-1]; United States' Opposition to Defendant's Motion for Sentence Reduction and Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) ("Gov't Opp.") [Dkt. No. 171]; Reply to Opposition to Motion for Compassionate Release ("Def. Reply") [Dkt. No. 172]; and United States' Surreply to Defendant's Motion for Sentence Reduction and Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) ("Gov't Surreply") [Dkt. No. 179].

States v. Clark ("Clark II"), 382 F. Supp. 3d 1 (D.D.C. 2019). Mr. Clark appealed and the D.C. Circuit dismissed his appeal for lack of subject matter jurisdiction because Mr. Clark's Section 924(c) claim remained pending before this Court. United States v. Clark ("Clark III"), 977 F.3d 1283 (D.C. Cir. 2020). On March 13, 2020, Mr. Clark filed a supplemental pleading asking the Court to vacate his Section 924(c) conviction in light of the Supreme Court's holding in United States v. Davis, 139 S. Ct. 2319 (2019), that the residual clause of Section 924(c)(3)(B) is unconstitutionally vague. See Second Suppl. Mot. Vacate. The Court has not yet ruled upon that request.

Mr. Clark is now incarcerated at FCI Fort Dix and will become eligible for release on March 20, 2032. Def. Mot. at 1, 6; Gov't Opp. at 1. At the time that the United States filed its surreply, Mr. Clark had served approximately half his sentence. Gov't Surreply at 1.[2] Mr. Clark asserts that his medical conditions, which include chronic kidney disease, pre-diabetes, hyperlipidemia, high body mass index ("BMI"), and sickle cell trait, and his status as an incarcerated African American, place him at increased risk of severe illness if he contracts COVID-19 while in prison. Def. Mot. at 7, 11-14; Def. Ex. 3 at 13-22. On March 9, 2021, Mr. Clark received his first dose of the Moderna COVID-19 vaccine and he received his second dose on April 7, 2021. Gov't Surreply at 16. He "is now fully vaccinated against COVID-19." Id.

II. LEGAL STANDARD

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed . . . but the rule of finality is subject to a few narrow exceptions." Freeman v. United States, 564 U.S. 522, 526 (2011) (internal quotation marks and

---

[2] Depending on how the Court resolves Mr. Clark's Section 2255 claim concerning the Section 924(c) conviction, the time remining on Mr. Clark's sentence may be reduced.

citation omitted). One such exception is codified at 18 U.S.C. § 3582(c)(1)(A). As modified by the First Step Act in 2018, Section 3582(c)(1)(A) allows courts to alter a sentence upon a motion by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request." 18 U.S.C. § 3582(c)(1)(A).

A defendant who seeks compassionate release pursuant to Section 3582(c)(1)(A) must establish "extraordinary and compelling reasons" for a sentence reduction. 18 U.S.C. § 3582(c)(1)(A). In evaluating this factor, courts historically have looked to a policy statement promulgated by the U.S. Sentencing Commission in 2018, which describes several categories of circumstances that may qualify as "extraordinary and compelling." See U.S. SENT'G GUIDELINES MANUAL ("U.S.S.G.") § 1B1.13 cmt. n.1 (U.S. SENT'G COMM'N 2018). Because the Sentencing Commission has not updated the policy statement "to reflect the First Step Act's changes," United States v. Long, 997 F.3d 342, 348 (D.C. Cir. 2021), including the fact that defendants themselves may now move for compassionate release, the D.C. Circuit has held that the policy statement "is not 'applicable' to defendant-filed motions," id. at 355. In the wake of United States v. Long, district courts must "assess whether [a defendant] has demonstrated 'extraordinary and compelling reasons' . . . without treating U.S.S.G. § 1B1.13 as binding." United States v. Johnson, 858 F. App'x 381, 384 (D.C. Cir. 2021) (per curiam).

The compassionate release statute instructs courts evaluating whether to reduce a sentence to consider the sentencing factors set out in 18 U.S.C. § 3553(a) "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). These factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—

4

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant;
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(1)-(2). Consideration of these factors "requires a discretionary balancing," United States v. Long, 997 F.3d at 360, "with an eye toward whether it is necessary to maintain the prior term of imprisonment despite the extraordinary and compelling reasons to modify the defendant's sentence," United States v. Johnson, 464 F. Supp. 3d 22, 30 (D.D.C. 2020).

## III. DISCUSSION

### A. Exhaustion of Administrative Remedies

Mr. Clark submitted a request for compassionate release to the Warden of FCI Fort Dix on October 14, 2020, which described his concerns related to COVID-19 and his medical conditions. See Def. Mot. at 6; Def. Ex. 2. More than thirty days have elapsed without a reply from the warden, Def. Mot. at 6, and the United States agrees that Mr. Clark has exhausted his administrative remedies, Gov't Surreply at 2. Mr. Clark's request therefore is properly before the Court. See 18 U.S.C. § 3582(c)(1)(A).

### B. Extraordinary and Compelling Reasons

Mr. Clark raises concerns that he could suffer "devastating" or "potentially fatal" consequences if he contracts COVID-19 while incarcerated. Def. Mot. at 7, 11. He argues that he is particularly vulnerable to severe illness related to COVID-19 as a result of his chronic kidney disease, pre-diabetes, hyperlipidemia, high BMI of 31.3, and sickle cell trait. Id. at 7;

5

Def. Ex. 3 at 13-22. Mr. Clark also asserts that his status as an incarcerated African American increases his risk because "African Americans are stricken with COVID-19 in overwhelming percentages compared to Caucasians." Def. Mot. at 11.

Current CDC guidance provides that "[p]eople of any age . . . are more likely to get severely ill from COVID-19" if they have certain conditions, including two of Mr. Clark's conditions: chronic kidney disease and obesity, which the CDC defines as BMI between 30 $kg/m^2$ and 40 $kg/m^2$. People with Certain Medical Conditions, CENTERS FOR DISEASE CONTROL AND PREVENTION, http://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal (updated Oct. 14, 2021). As to Mr. Clark's status as an incarcerated African American, the CDC has commented that "[l]ong-standing systemic health and social inequities have put various groups of people at increased risk of getting sick and dying from COVID-19, including many people from certain racial and ethnic minority groups." Id.

The United States concedes that Mr. Clark "has established medical conditions that, absent his vaccination . . . otherwise would constitute an extraordinary and compelling reason for release in light of the COVID-19 pandemic." Gov't Surreply at 12. Given Mr. Clark's vaccination status, however, the United States contends that he "cannot establish extraordinary and compelling reason[s] for release based on COVID-19." Id.

The Court agrees with the United States that, because Mr. Clark is fully vaccinated against COVID-19, his circumstances lack the extraordinary and compelling character that would warrant a sentence reduction. According to the CDC, the vaccine that Mr. Clark received has proven to be approximately 94.1% effective in preventing COVID-19 infection in people such as Mr. Clark who have received both doses, and has been "highly

effective in clinical trials at preventing COVID-19 among people of diverse age, sex, race, and ethnicity categories and among people with underlying medical conditions." Moderna COVID-19 Vaccine Overview and Safety, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Moderna.html (updated Nov. 30, 2021). Even if Mr. Clark were to contract COVID-19 despite being fully vaccinated, the CDC suggests that he is "less likely to develop serious illness" than an unvaccinated individual, and that he would be "much less likely to be hospitalized or die." The Possibility of COVID-19 After Vaccination, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/why-measure-effectiveness/breakthrough-cases.html (updated Nov. 9, 2021). In other words, the vaccine that Mr. Clark has received dramatically reduces the very risks of infection and illness that form the basis for his compassionate release motion.

Other judges in this district have recognized that the remarkable effectiveness of these vaccines raises an extremely high bar to establishing extraordinary and compelling reasons for a sentence reduction based on the risk of contracting COVID-19. See, e.g., United States v. Morales, Crim. No. 06-0248-4, 2021 WL 4622461, at *6 (D.D.C. Oct. 7, 2021) (Bates, J.); United States v. Wilson, Crim. No. 96-0319-01, 2021 WL 5292457, at *4 (D.D.C. Aug. 6, 2021) (Kollar-Kotelly, J.); United States v. Edwards, Crim. No. 03-0234, 2021 WL 3128870, at *3 (D.D.C. July 22, 2021) (Bates, J.); United States v. Martinez, Criminal No. 05-445-1, 2021 WL 2322456, at *2 (D.D.C. June 7, 2021) (Lamberth, J.); United States v. Hicks, Crim. No. 93-0097-2, 2021 WL 1634692, at *6 (D.D.C. Apr. 27, 2021) (Howell, C.J.); United States v. Shepard, Crim No. 07-85, 2021 WL 848720, at *5 (D.D.C. Mar. 4, 2021) (Moss, J.). While the D.C. Circuit has not addressed the issue, the Third, Sixth, Seventh, and Tenth Circuits have

7

suggested that it would be rare for a fully vaccinated individual to meet that extremely high bar. See United States v. Battle, No. 21-2151, 2021 WL 4550925, at *2 (3d Cir. Oct. 5, 2021) (per curiam); United States v. Bias, No. 21-3495, 2021 U.S. App. LEXIS 19490, at *1 (6th Cir. June 29, 2021); United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021); United States v. Hald, 8 F.4th 932, 936 n.2 (10th Cir. 2021). Nothing in Mr. Clark's filings indicates that he faces any acute risk related to COVID-19 that persists despite his vaccination status.

It also is not clear that incarceration at FCI Fort Dix increases Mr. Clark's risk of contracting COVID-19. When Mr. Clark filed his motion, he asserted that his facility was in the midst of "a massive coronavirus outbreak." Def. Mot. at 17 (quotation marks omitted). As of August 19, 2021, however, the United States reported that no inmates and two staff members at FCI Fort Dix tested positive for COVID-19, and that there had been two inmate deaths and no staff deaths from COVID-19. Gov't Surreply at 9. As of December 1, 2021, out of the 3,279 inmates at FCI Fort Dix, 2,079 inmates have been fully vaccinated against COVID-19. See COVID-19 Vaccine Implementation, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Dec. 1, 2021); FCI Fort Dix, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/ftd/ (last visited Dec. 1, 2021). Given this progress, "it is not clear that prison presents the same heightened risk of COVID-19 exposure that it once did." United States v. Edwards, 2021 WL 3128870, at *3.

In light of Mr. Clark's vaccination status and the current COVID-19 case rates and vaccination rates at FCI Fort Dix, the Court concludes that Mr. Clark has not established extraordinary and compelling reasons for a sentence reduction.

*C. Sentencing Factors*

The Court also concludes that the sentencing factors set forth in 18 U.S.C. § 3553(a) do not support a sentence reduction. "[T]he nature and circumstances of [Mr. Clark's] offense," 18 U.S.C. § 3553(a)(1), were extremely serious. "On May 6, 2009, Mr. Clark and an unidentified accomplice carjacked, robbed, and kidnapped Michael Walker at gunpoint in Washington, D.C." Clark I, 565 F. App'x at 5. The United States alleged, and the evidence at trial corroborated, that Mr. Clark and his accomplice threatened to kill Mr. Walker's family, placed the barrel of a gun in Mr. Walker's mouth, "tore Mr. Walker's gold chain from is neck[,] took his watch, money, and wallet," and "attempted to place a bag over Mr. Walker's head." Clark II, 382 F. Supp. 3d at 9; see also Gov't Opp. at 3; PSR ¶¶ 6-7. Mr. Clark and his accomplice demanded money from Mr. Walker and "drove Mr. Walker's car to various locations where they suspected Mr. Walker was keeping money," including, eventually, Mr. Walker's home, where they again threatened to kill his family. Clark II, 382 F. Supp. 3d at 9; see also Gov't Opp. at 3; PSR ¶ 8. When Mr. Walker tried to escape, Mr. Clark "struck him with his gun above the left eye, causing substantial bleeding," and "forced him to lie down on the floor [of the car] . . . and pinned him down with the seat." Clark II, 382 F. Supp. 3d at 10; see also Gov't Opp. at 3; PSR ¶ 9. They continued to drive around searching for money until Mr. Walker escaped. Gov't Opp. at 3-4; PSR ¶¶ 10-11. This conduct is exceptionally brutal and violent. In view of the evidence at trial, the Court has serious concerns about the harm to others that could result if Mr. Clark were released.

The Court also has concerns arising from Mr. Clark's criminal record. He kidnapped Mr. Walker while on release in a felony drug distribution case pending in D.C. Superior Court. See Gov't Suppl. Opp. at 25. At the time that Mr. Clark was sentenced in this

case, he had accrued five prior adult convictions for driving with a suspended license, attempted possession of marijuana, possession of marijuana, possession with the intent to distribute cocaine, and a Bail Reform Act violation. Gov't Suppl. Opp. at 26; PSR ¶¶ 37-41. Although Mr. Clark's "criminal history is predominantly drug-related and non-violent," Gov't Opp. at 13, it nonetheless establishes a problematic pattern of breaking the law, which culminated in the exceptionally dangerous and violent incident for which he is currently incarcerated.

Mr. Clark argues that he has been rehabilitated while incarcerated, citing the fact that he has used his time in prison to complete his GED and several vocational programs, and that he has secured an offer of employment that he could begin upon release. Def. Mot. at 16; Def. Reply at 4-5. Mr. Clark has also submitted a list of individuals who, he represents, would attest to his mature, compassionate, spiritual, and positive disposition. Def. Reply at 3. While these are encouraging developments, they do not assuage the Court's concerns arising from Mr. Clark's criminal record and his conduct in this case. On balance, Mr. Clark's "history and characteristics," 18 U.S.C. § 3553(a)(1), do not weigh in favor of compassionate release.

The goals of incarceration also would not be served by reducing Mr. Clark's sentence. The Court carefully considered the evidence presented at trial, the Sentencing Guidelines, and the Section 3553(a) factors before sentencing Mr. Clark to 260 months of incarceration. Mr. Clark has now served more than half the sentence that the Court imposed but has more than ten years remaining. In the Court's view, requiring him to serve at least a substantial portion of the remainder of his sentence is still appropriate and necessary "to promote respect for the law, [] to provide just punishment for the offense[, ] to afford adequate deterrence to criminal conduct[, and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(A)-(C).

## IV. CONCLUSION

Because Mr. Clark has not established extraordinary and compelling reasons to justify a sentence reduction, and because the sentencing factors identified in Section 3553(a) weigh against reducing Mr. Clark's sentence at this time, the Court will deny Mr. Clark's motion for compassionate release. It therefore is hereby

ORDERED that Mr. Clark's Motion for Compassionate Release [Dkt. No. 168] is DENIED.

SO ORDERED.

/s/ Paul L. Friedman
PAUL L. FRIEDMAN
United States District Judge

DATE: 12/1/21